John Burton, State Bar No. 86029
  jb@johnburtonlaw.com
Timothy J. Midgley, State Bar No. 123738
  tim@tmidgleylaw.com
THE LAW OFFICES OF JOHN BURTON
65 N. Raymond Avenue, Suite 300
Pasadena, California 91103
Telephone: (626) 449-8300
Facsimile:  (626) 449-4417

Attorneys for Plaintiffs Pablo Morales, Sr.,
and Consuelo Morales, both individually
and as the successors in interest of
Oscar Morales, deceased, and Rafael Morales,
Pablo Morales, Jr., and Carmen Morales

FILED 2011 DEC 13 AM 11:00 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES BY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO MORALES, SR. AND CONSUELO MORALES, BOTH INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO OSCAR MORALES, DECEASED, AND RAFAEL MORALES, PABLO MORALES, JR., AND CARMEN MORALES,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHIEF OF POLICE CHARLIE BECK, POLICE OFFICER DAVIS GIRON, and DOES 1-10,<br><br>Defendants. | Case No. CV11-04757 SVW (SHx)<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES FOR:<br><br>1. 42 U.S.C. § 1983 – WRONGFUL DEATH<br>2. 42 U.S.C. § 1983 – SURVIVAL ACTION;<br>3. 42 U.S.C. § 1983 – DEPRIVATION OF THE RIGHTS OF PLAINTIFFS TO FAMILIAL RELATIONSHIPS WITH THE DECEDENT<br>4. 42 U.S.C. §§ 12131 et seq.<br>5. 29 U.S.C. §§ 791 et seq.<br>6. CAL. CIV. CODE §§ 51 et seq;<br>7. ASSAULT and BATTERY; and<br>8. NEGLIGENCE; and<br>9. INFLICTION OF EMOTIONAL DISTRESS<br><br>DEMAND FOR JURY TRIAL |

## JURISDICTION

1. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 (federal question) and § 1343(3) (civil rights). The state law claims for relief are within the supplemental jurisdiction of the Court, pursuant 28 U.S.C. § 1367.

## VENUE

2. Plaintiffs' claims herein arises out of an incident involving Los Angeles Police Department officers, in North Hills, in the City of Los Angeles, State of California, and within this judicial district.

## PARTIES

3. Plaintiffs Pablo Morales, Sr. and Conseulo Morales, are competent adults who appear here individually and as the Personal Representatives for decedent Oscar Morales. Plaintiffs Rafael Morales, Pablo Morales, Jr., and Carmen Morales are competent adults who appear here individually. They are the adult siblings of decedent, Oscar Morales, and were present when he was shot and killed.

4. Defendant City of Los Angeles is a government entity operating pursuant to its Charter. Defendant Los Angeles Police Department (LAPD) is a public agency subject to suit.

5. Defendant Charlie Beck is the Los Angeles Chief of Police. He is the decision maker for LAPD. Defendant Davis Giron was, at the time relevant hereto, an officer of LAPD, acting within the course and scope of his employment, and under color of state law.

6. The true names of defendants Does 1 through 10 are presently unknown to plaintiffs, who therefore sue each of these defendants by such fictitious name; but upon ascertaining the true identity of a defendant Doe, plaintiffs will amend this Complaint or seek leave to do so by inserting the true name in lieu of the fictitious name. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that each defendant Doe herein is in some manner responsible for the injuries and damages herein alleged and that each individual Doe, in committing the acts herein alleged, acted within

the scope of his or her employment and under color of state law.

## FACTS

### A. General Allegations on Policy and Practice

7. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that the governmental entity defendants and their respective decision makers, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of the decedent, plaintiffs, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages of, among other things,

   a. Subjecting people to unreasonable uses of force against their persons when they are agitated and delusional, presenting a health emergency rather than a law enforcement problem.

   b. Selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence, and other misconduct;

   c. Failing to implement protocols and train employees in the proper way to contain, treat and secure persons such as the decedent who are in an irrational, suicidal or delusional and agitated state because of mental illness.

   e. Failing to take account of and to provide proper accommodations for persons with mental disabilities to prevent discrimination because of mental disability and because no steps or no appropriate steps have been taken to accommodate persons with mental disabilities. Those failures include not training employees in the signs and symptoms of mental illness, not training employees that what appears to be inappropriate behavior by a person might in fact be an expression of mental illness, not training officers that mentally impaired persons may have extreme difficulty with certain social interactions, including interactions with law enforcement officers, not training employees that mentally impaired persons may have extreme difficulty understanding and following commands and

directions, not training employees that they should not arrest mentally impaired persons, without taking into account and making proper accommodations for their disability and the behavioral problems mental illness engenders, not training employees that they should use caution and restrain in approaching and dealing with persons with mental illness, not training employees that special training is necessary for properly interacting with persons with mental illness, not training employees to call persons with special training and not to attempt to interact with persons with mental illness without having received the necessary special training and without waiting for persons with special training, not training employees that they should not use potentially lethal force to control mentally impaired persons without taking into account and providing proper accommodations for their disability, and not training employees that a person with a mental disability should not be subjected to uses of any force without taking into account and providing proper accommodations for their disability.

f. Failing to adequately discipline employees involved in misconduct.

g. Condoning and encouraging employees in the belief that they can violate the rights of persons such as the decedent in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

h. Failing to promulgate, distribute and enforce reasonable policies and procedures to preclude the interaction of employees who are not trained in dealing with persons with mental illness or suicidal subjects except in the most extreme "life-threatening" situations.

8. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that the entity defendants and their respective decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usages permitting the other defendants herein to engage in the unlawful and unconstitutional

SECOND AMENDED COMPLAINT FOR DAMAGES
4

actions, policies, practices, and customs or usages set forth in the foregoing paragraph. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of plaintiffs and their decedent.

### B. Allegations Regarding the Death of Oscar Morales.

9. On May 27, 2010 around noon, decedent Oscar Morales was at home at 8327 Burnet Road, North Hills, California, having been driven home by his mother, claimant Conseulo Morales, after being released from a 72-hour hold under Cal. Welfare and Institutions Code § 5150 at Mission Community Hospital following a suicide attempt. Oscar was still suicidal. The family got together to support him. Consuelo Morales on the advice of Mission Community Hospital called 911 to request emergency assistance in getting decedent re-admitted to hospital for suicide prevention and other mental treatment.

10. At about 12:30 pm, LAPD Officer, defendant Davis Giron and another officer arrived at the residence in response to the dispatch of the 911 call. Pablo Morales, Jr., advised them of the circumstances of decedent's mental state, including his propensity for sudden, violent outbursts, his requests for a gun, and his suicidal tendencies.

11. Officer Giron and the second officer entered the residence without waiting for any backup or specialists to assist in this difficult and dangerous situation. Violating common sense and good tactical training, they separated, with the second officer going with other family members into one room while Officer Giron remained alone with Oscar in the family living room. They talked and then there was a commotion. Officer Giron alleges that Oscar threatened to strike him with a poker. Officer Giron shot Oscar in the chest.

12. Plaintiff Pablo Morales, Jr., responding to the commotion, saw Officer

Giron shoot his brother. The other family members heard the shot and knew immediately that Oscar had been shot and seriously wounded and all saw him lying on the living room floor. All experienced extreme emotional distress as a result. Shortly after the shooting, additional LAPD officers arrived at the residence. The officers magnified claimants' emotional distress by unnecessarily seeking to handcuff Oscar. Eventually paramedics responded and transported Oscar, who died from the gunshot wound.

### C. Allegations Regarding Damages.

13. Plaintiffs have lost support, decedent's love, comfort and society, and have sustained emotional distress, all in amounts in accordance with proof. Plaintiffs have incurred burial and other related expenses. The decedent sustained general damages, including the loss of enjoyment of his life, in an amount in accordance with proof.

14. The conduct of the defendants was willful, malicious, oppressive and in reckless disregard for the constitutional rights of plaintiffs and the decedent himself, thus justifying punitive damages against the individual defendants, but not the entity defendants, in an amount in accordance with proof.

### D. Allegations Regarding Exhaustion of Administrative Remedies

15. Plaintiffs timely filed administrative claims with the City of Los Angeles pursuant to Cal. Gov't Code § 910 on November 9, 2010 and on November 24, 2010. The claims were denied and this action was filed within six months of the date of denial.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – WRONGFUL DEATH)

(Plaintiffs Oscar Morales, Sr., and Consuelo Morales)

(Against Defendants Giron and Does 1 through 6)

16. Defendants Giron and Does 1 though 6, acting under color of state law, deprived the decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth and Fourteenth Amendments to the Constitution, in that, among other things, they:

    a) Seized him in his home without a warrant;

    b) with deliberate indifference, created or exposed decedent to a danger which he would not have otherwise faced, and wherein the use of force including deadly force against decedent was possible;

    c) with deliberate indifference to decedent's medical condition including his mental condition and suicidal ideation, violated decedent's right to bodily integrity by doing each of the following: Entering decedent's home with a gun; confronting decedent in a small room; requiring decedent's family members to leave that small room and causing or permitting his partner to leave that small room so that he was then alone in a small room with the decedent; failing to search decedent and his immediate area; failing to have any weapon with which to defend himself other than a firearm of .45 caliber with hollow point bullets; confronting decedent in defiance of his training and appropriate and necessary policing standards; and,

    c) shot decedent and killed him where no deadly force was justified.

17. Plaintiffs Oscar Morales, Sr., and Consuelo Morales are the proper parties with standing pursuant to Cal. Civ. Proc. Code § 377.60 (incorporated herein by virtue of 42 U.S.C. § 1988) to pursue this wrongful death claim pursuant to section 1983.

18. Plaintiffs Oscar Morales, Sr., and Consuelo Morales have been damaged, including pecuniary loss and other compensable injuries resulting from loss of love,

1  society, comfort, attention, services, and support of the decedent, in an amount in
2  accordance with proof.
3     19.   As a further proximate result of the acts of defendants, as alleged above,
4  plaintiff Oscar Morales, Sr., and Consuelo Morales have incurred expenses, including
5  burial expenses, in an amount in accordance with proof.
6     20.   In doing the foregoing wrongful acts, defendant Officer Giron acted in
7  reckless and callous disregard for the constitutional rights of the decedent. The wrongful
8  acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus
9  warranting the award of punitive damages against Officer Giron and Does 1 through 6,
10 (but not the entity defendants, which are immune from such damages) in an amount
11 adequate to punish the wrongdoers and deter future misconduct.

## SECOND CLAIM FOR RELIEF

(42 U.S.C. § 1983 – SURVIVAL ACTION)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales as

successors in interest and personal representatives of the decedent)

(Against Defendants Giron and Does 1 through 6)

17     21.   Plaintiffs Pablo Morales, Sr., and Consuelo Morales brings this claim for
18 relief in their capacity as the successors in interest and personal representatives of the
19 decedent, for whom there is no estate opened pursuant to Cal. Civ. Proc. Code § 377.30
20 and § 377.32.
21     22.   This claim for relief arose in the decedent's favor, and the decedent would
22 have been the plaintiff with respect to this claim for relief had he lived.
23     23.   Defendants Giron and Does 1 though 6, acting under color of state law,
24 deprived the decedent of rights, privileges, and immunities secured by the Constitution
25 and laws of the United States, including those secured by the Fourth and Fourteenth
26 Amendments to the Constitution, in that, among other things, they:
27     a) Seized him in his home without a warrant;
28

    b) with deliberate indifference, created or exposed decedent to a danger which he would not have otherwise faced, and wherein the use of force including deadly force against decedent was possible;

    c) with deliberate indifference to decedent's medical condition including his mental condition and suicidal ideation, violated decedent's right to bodily integrity by doing each of the following: Entering decedent's home with a gun; confronting decedent in a small room; requiring decedent's family members to leave that small room and causing or permitting his partner to leave that small room so that he was then alone in a small room with the decedent; failing to search decedent and his immediate area; failing to have any weapon with which to defend himself other than a firearm of .45 caliber with hollow point bullets; confronting decedent in defiance of his training and appropriate and necessary policing standards;  and,

    c) shot decedent and killed him where no deadly force was justified.

24. As a proximate result of the foregoing wrongful acts of defendants, and each of them, the decedent sustained general damages, including pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof.

25. In doing the foregoing wrongful acts, defendants Officer Giron and Does 1 through 10 acted in reckless and callous disregard for the constitutional rights of the decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against Officer Giron in an amount adequate to punish the wrongdoers and deter future misconduct.

## THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – DEPRIVATION OF THE RIGHTS OF PLAINTIFFS TO FAMILIAL RELATIONSHIPS WITH THE DECEDENT)

(Plaintiffs Oscar Morales, Sr., and Consuelo Morales)

(Against Defendants Giron and Does 1 through 6)

26. Defendants Officer Giron and Does 1 through 6, acting under color of state law, deprived plaintiffs of their right to a familial relationship with the decedent without due process of law in violation of the Fourteenth Amendment by their deliberate indifference to his medical needs, and in creating a dangerous situation or exposing decedent to a danger which he would not otherwise have faced, and in disregard for his bodily integrity and which resulted in his death by shooting, and by the use of unreasonable, unjustified force and violence all of which shocks the conscience and demonstrates an intent to harm, causing injuries, which resulted in the decedent's death, all without provocation.

27. As a proximate result of the foregoing wrongful acts of defendants, and each of them, plaintiffs sustained general damages, including grief, emotional distress and pain and suffering and loss of comfort and society, and special damages, including loss of support, in an amount in accordance with proof.

28. In doing the foregoing wrongful acts, defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of plaintiffs and the decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant (but not the entity defendants, which are immune) in an amount adequate to punish the wrongdoers and deter future misconduct.

## FOURTH CLAIM FOR RELIEF

(42 U.S.C. § 1983 – WRONGFUL DEATH, SURVIVAL ACTION AND DEPRIVATION OF THE RIGHTS OF PLAINTIFFS TO FAMILIAL RELATIONSHIPS WITH THE DECEDENT)

(Fourth and Fourteenth Amendments – Entity Liability –

against defendants City of Los Angeles, LAPD,

Chief Beck as an individual, and DOES 5 through 10)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

29. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, defendants City of Los Angeles, LAPD, Chief Beck, and Does 5 through 10, with deliberate indifference, and conscious and reckless disregard to the safety, security, medical needs, and constitutional and statutory rights of decedent and plaintiffs, including the right to be free from unreasonable seizures and excessive force under the Fourth and Fourteenth Amendments, the right to procedural and substantive due process, and the right to receive medical care, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the policies, practices and customs described above.

As a direct and proximate result of the foregoing, decedent was shot and killed and suffered damages, and plaintiffs sustained injuries and damages as proved.

## FIFTH CLAIM FOR RELIEF

Violation of Title II of the Americans with Disabilities Act

(42 U.S.C. § 12131 et seq.)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

(Against Defendants City of Los Angeles and LAPD only)

30. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

31. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(l)-(2).

32. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

33. The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.160, require public entities to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others.

34. At all times relevant to this action, defendants City of Los Angeles and LAPD were public entities within the meaning of Title II of the ADA and provided programs, services, and activities to the general public. The U.S. Department of Justice, Civil rights Division, Disability Rights Section, has published, "Commonly Asked

Questions About the Americans with Disabilities Act And Law Enforcement" a document in which the U.S. Department of Justice provides guidelines in the interpretation of Title II of the ADA (the Guidelines). In the Guidelines the Department of Justice notes that The ADA affects virtually everything that police officers and deputies do, for example, including providing emergency medical services and other duties.

35. At all times relevant to this action, decedent was a qualified individual in that he was a citizen of the State of California and resident in the City of Los Angeles and thereby entitled and qualified to receive and participate in the programs, services, and activities provided by defendants City of Los Angeles and LAPD.

36. Decedent was a person with a disability within the meaning of Title II of the ADA in that he suffered from severe mental impairment, was suicidal, and subject to violent outbursts all of which made him, among other things, unemployable at that time and resulted in substantial limitations in his mental and emotional processes such as thinking, concentrating, and interacting with others.

37. Through their acts and omissions described herein, defendants City of Los Angeles and LAPD have violated Title II of the ADA by excluding decedent from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services they provide to the general public.

38. Through the acts and omissions of defendants City of Los Angeles and LAPD and their agents and employees described herein, said defendants subjected decedent to discrimination on the basis of his disability in violations of Title II of the ADA by failing to provide communication that is as effective as communication provided to the general public, by failing to provide emergency medical services that are as effective and provide the same benefits as emergency medical services provided to the general public, and by failing to provide security for decedent's person that provided the same benefits as that provided to the general public.

39. Through the acts and omissions of defendants City of Los Angeles and LAPD and their agents and employees described herein, said defendants denied to decedent the opportunity to receive the benefits of or to participate in programs, services, and activities they provide, including the service or activity of communication, the service, program or activity of receiving the provision of emergency medical services, and the service of providing security for decedent's person, particularly with regard to providing control, restraint, communication, use of force, and custodial services.

40. Through the acts and omissions of defendants City of Los Angeles and LAPD and their agents and employees described herein, said defendants subjected decedent to discrimination on the basis of his disability in violations of Title II of the ADA by failing to provide medical treatment, including the provision of personnel who were appropriately trained in medical, psychiatric or psychological needs to care for his problems as effectively as medical, psychiatric, and psychological treatment and appropriately trained medical, psychiatric, and psychological personnel are provided and made available for the general public.

41. Plaintiffs are informed, believe, and thereon allege that defendants City of Los Angeles and LAPD and their agents and employees have failed and continue to fail to take into account and provide reasonable accommodations for persons with mental disabilities by failing to:

    a. Adopt and enforce policies and procedures for communicating effectively, controlling and interacting with persons with mental disabilities;

    b. Adopt and enforce policies and procedures for providing persons with medical problems including mental disabilities and suicidal ideation access to medical facilities including the provision of employees with medical training and medical resources to communicate, interact with and control such persons;

    b. Train and supervise City of Los Angeles and LAPD officers and employees to communicate effectively, control and interact with persons with mental

disabilities, including suicidal tendencies;

   c.  Train and supervise City of Los Angeles and LAPD officers and employees regarding the cognition and behavior of persons with mental disabilities, including suicidal ideation and tendencies;

   d.  Train and supervise City of Los Angeles and LAPD officers and employees that they should not use force, or put themselves in positions were the use of force may become necessary without first notifying and obtaining the assistance of persons who have the requisite training and experience in communicating effectively with and controlling and interacting with persons with mental disabilities, especially suicidal persons.

42. As a direct and proximate result of the aforementioned acts, decent suffered and plaintiffs suffered and continue to suffer humiliation, hardship, anxiety, and indignity, and severe mental and emotional anguish, and decedent was killed.

43. Pursuant to 42 U.S.C. § 12133, plaintiffs are entitled to recover the compensatory damages described in this Complaint and reasonable attorneys' fees and costs incurred in bringing this action.

### SIXTH CLAIM FOR RELIEF

Violation of Section 504 of the Rehabilitation Act of 1973

(29 U.S.C. § 794)

(Against Defendant City of Los Angeles and LAPD only)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

44. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

45. Decedent, at all times relevant herein, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from mental illness, including suicidal tendencies, an impairment that substantially limited one or more of his major life activities. See 29 U.S.C. § 705(20)(B).

46. At all times relevant to this action defendants City of Los Angeles and LAPD were recipients of Federal funding within the meaning of the Rehabilitation Act.

47. Through their acts and omissions described herein, defendants City of Los Angeles and LAPD have violated the Rehabilitation Act, including all applicable implementing regulations, by excluding decedent, from participation in, denying him the benefits of, and subjecting him to discrimination in the benefits and services they provide to the general public.

48. As a direct and proximate result of the aforementioned acts, decedent suffered great pain, suffering and death and plaintiffs have suffered and continue to suffer humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

49. Pursuant to 29 U.S.C. § 794(a), plaintiffs are entitled to recover the damages described in this Complaint and reasonable attorneys' fees and costs incurred in bringing this action.

## SEVENTH CLAIM FOR RELIEF

(Cal. Civ. Code §§ 51, 51.7, 52 and 52.1)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

(Against Defendants Giron, Does 1 through 6 and City of Los Angeles)

50. The United States Constitution, Amendment IV, and the Cal. Const. Art. I § 13 guarantees the right of persons to be free from violence on account of mental disability and from excessive force at the hands of government officers. Defendants, by engaging in the wrongful conduct alleged herein, denied this right to the decedent and plaintiffs, thus giving rise to claims for damages pursuant to Cal. Civ. Code § 52.1.

51. Cal. Civ. Code § 51 guarantees the right to all persons within the State of California not to be discriminated against, because of their individual or personal characteristics, including mental disability.

52. Cal. Civ. Code §§ 51.7 guarantees the right to all persons within the State of California not to be discriminated against, and to be free from violence, because of their individual or personal characteristics, including mental disability.

53. Plaintiffs are the proper party with standing pursuant to Cal. Civ. Proc. Code § 377.60 to pursue the wrongful death claim pursuant to §§ 51, 51.7 and 52.1.

54. As a direct and proximate cause of the acts of defendants Officer Giron and Does 1 through 6, decedent and plaintiffs were injured as set forth above.

55. Defendant City of Los Angeles has respondeat superior liability for the acts of its employees and officers, defendants Giron and Does 1 through 6.

56. Plaintiffs are entitled to statutory damages under Cal. Civ. Code § 52, as well as damages described in this Complaint, and reasonable attorneys' fees and costs incurred in bringing this action and, against Officer Giron and Does 1 through 6 only, punitive damages according to proof (for which the entity defendants are immune).

## EIGHTH CLAIM FOR RELIEF
### (ASSAULT AND BATTERY)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

(Against Defendants Officer Giron, Does 1 through 6 and City of Los Angeles)

57. Defendants Giron and Does 1 through 6 assaulted and battered the decedent, causing his death.

58. Defendant City of Los Angeles has respondeat superior liability for the acts of its employees and officers, defendants Giron and Does 1 through 6.

59. As a direct and proximate cause of the aforementioned acts of defendants, decedent and plaintiffs were injured as set forth above, and plaintiffs are entitled to

compensatory and punitive damages from the individual defendants (not against defendant City of Los Angeles), according to proof.

## NINTH CLAIM FOR RELIEF

(Negligence)

(Plaintiffs Pablo Morales, Sr., and Consuelo Morales individually and as successors in interest and personal representatives of the decedent)

(Against All Defendants)

60. By virtue of the foregoing, defendants each owed decedent and plaintiffs a duty of due care, and that duty was breached in that defendants' negligence and failure to exercise due care in dealing with the decedent proximately causing his death. Defendants City of Los Angeles, Los Angeles Police Department and Chief Beck breached the duty codified in by failing to adequately train and supervise their police officers in there responsibilities and duties under the ADA, the Rehabilitation Act, and Cal. Civ. Code §§ 51, 51.7 and 52.1, in communicating and interacting with mentally disabled persons, and in the use of lethal force.

61. As a direct and proximate cause of the aforementioned acts of defendants, decedent and plaintiffs were injured as set forth above, and are entitled to compensatory damages according to proof.

## TENTH CLAIM FOR RELIEF

(Infliction of Emotional Distress)

(All plaintiffs Against Defendant Officer Giran)

62. Officer Giron gunned down and killed Oscar Morales in the presence of all the plaintiffs, the parents and the three siblings, who had summoned public safety officials to help them obtain medical treatment for their suicidal family member. This extreme and outrageous act intentionally, recklessly and negligently caused the plaintiffs, and each of them, extreme emotional distress, all to plaintiffs' damages as established at trial.

**WHEREFORE**, plaintiffs pray for judgment as follows:

<u>On All Causes of Action</u>

    a.    Compensatory general and special damages in accordance with proof;

    b.    Costs of suit necessarily incurred herein; and

    c.    Such further relief as the Court deems just or proper.

<u>On All Causes of Action except the Fourth and Ninth Cause of Action</u>

    d.    Exemplary damages against the defendants (except the immune entity defendants City of Los Angeles and LAPD) in an amount sufficient to make an example of those defendants and to deter future misconduct.

<u>On the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action</u>

    e.    Reasonable attorney's fees and expenses of litigation;

<u>On the Seventh Cause of Action</u>

    f.    Statutory damages including compensatory damages and a multiple of three times the compensatory damages amounting to not less than $4,000, and a civil penalty of $25,000.

Dated:   November 21, 2011       THE LAW OFFICES OF JOHN BURTON

By_____/s/_____
          John Burton
       Attorneys for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated: June 14, 2011       THE LAW OFFICES OF JOHN BURTON

By_____/s/_____
          John Burton
       Attorneys for Plaintiffs